IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| ABIGAIL WEISSENBACH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:17-cv-001642-LSC |
| | ) | |
| TUSCALOOSA COUNTY | ) | |
| SCHOOL SYSTEM, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**Memorandum of Opinion**

Plaintiff Abigail Weissenbach ("Weissenbach") brings this action against Defendants Tuscaloosa County School System ("Tuscaloosa County"), Joe Bradley Petrey, Jr. ("Petrey"), Schmitt Moore ("Moore"), James Barnett ("Barnett"), Gary Mims ("Mims"), Don Presley ("Presley"), Charles Orr ("Orr"), Randy Smalley ("Smalley"), Bill Copeland ("Copeland"), Laura McBride ("McBride"), Marcy Burroughs ("Burroughs"), Thad Fitzpatrick ("Fitzpatrick"), and Elizabeth Swinford ("Swinford") (collectively "Defendants"), alleging claims under Alabama state law, 20 U.S.C. § 1681, *et seq.* ("Title IX"), and 42 U.S.C. § 1983. All claims relate to an alleged sexual relationship between Weissenbach and her high school teacher

Petrey. Before the Court are motions to dismiss filed by Tuscaloosa County and Moore, Barnett, Mims, Presley, Orr, Smalley, and Copeland (collectively "Board Members") (doc. 29) and Burroughs and Fitzpatrick (doc. 30).[1] The motions have been fully briefed by the parties and are ripe for review. For the reasons described more fully herein, Defendants Tuscaloosa County and the Board Members' motion to dismiss (doc. 29) and Defendants Burroughs and Fitzpatrick's motion to dismiss (doc. 30) are due to be granted.

## I.   BACKGROUND[2]

Weissenbach is a former high school student of Brookwood High School in Tuscaloosa County, Alabama. Weissenbach was born in 1996, and from the 2013 to 2015 school years she had a sexual relationship with Petrey, who was her high school history and psychology teacher.

During high school, Weissenbach took dance classes at McCalla Dance Academy. At those classes, Weissenbach talked about Petrey as if he were her boyfriend. When her dance teachers learned that Petrey was

---

[1] Both sets of defendants have adopted and incorporated by reference the grounds for dismissal set forth in the other defendants' motion. (*See* Doc. 29 at 13 & Doc. 30 at 5.)

[2] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." *Johnson v. Midland Funding, LLC*, 823 F.3d 1334, 1337 (11th Cir. 2016). The following facts, are therefore, taken from the allegations contained in Weissenbach's Amended Complaint, and the Court makes no ruling on their veracity.

actually Weissenbach's teacher, they reported their concerns to Brookwood High School administrators. During a conference call between the dance teachers, Principal McBride, Vice Principal Burroughs, and Vice Principal Fitzpatrick, the administrators implied that they were upset about Weissenbach and Petrey's relationship and that they would make sure that it did not continue.

Following this conversation, Burroughs told Weissenbach's dance teachers that the administrators had informed the Tuscaloosa County School Board about their complaints and that the situation was being investigated. However, during the next school year, the dance teachers learned from other students that Weissenbach and Petrey were continuing to eat breakfast and lunch together at school. In July 2015, illicit photos of Weissenbach and Petrey were posted to the school Facebook page and Twitter, and a link to a cloud-based photo-sharing account with other photographs of Weissenbach and Petrey were also made widely available.

According to Weissenbach's Amended Complaint, the remaining defendants not discussed in the preceding facts are members of the Tuscaloosa County School Board. Specifically, Weissenbach alleges that Defendants Moore, Barnett, Mims, Presley, Orr, Smalley, and Copeland were Tuscaloosa County School Board members during Weissenbach and

Petrey's relationship. Swinford was the Superintendent of the Tuscaloosa County School System.

## II.  STANDARD OF REVIEW

### A. Subject Matter Jurisdiction

The Court must "inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "[B]ecause the constitutional standing doctrine stems directly from Article III's 'case or controversy' requirement, this issue implicates . . . subject matter jurisdiction, and accordingly must be addressed as a threshold matter regardless of whether it is raised by the parties." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1271 (11th Cir. 2015) (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003)). "Article III standing must be determined as of the time at which the plaintiff's complaint is filed," and "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) and *Allen v. Wright*, 468

U.S. 737, 752 (1984)). "[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala.*, 168 F.3d at 410. "The party invoking federal jurisdiction bears the burden of proving the essential elements of standing, although '[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]'" *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

### B. Rule 12(b)(6)

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, in order to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above

the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1301 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

## III. DISCUSSION

### A. Standing as to Request for Injunctive Relief

Although not addressed by the parties, the Court must first determine, as a threshold matter, whether Weissenbach has standing to assert her claims against the Defendants. *See Nat'l Park Conservation Ass'n*, 324 F.3d at 1242. The Court determines standing according to differing strands of analysis: the constitutional requirements under Article III and prudential limitations on the exercise of otherwise constitutionally allowed claims. *Elend v. Basham*, 471 F.3d 1199, 1205–06 (11th Cir. 2006). To establish standing under Article III, a plaintiff must show (1) "an injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that "it [is] likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks and citations omitted). The injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560. (internal quotation marks and citations omitted). Also, the causal connection must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (internal quotation marks, citations, and alterations omitted); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real

and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.") Under prudential requirements, "a plaintiff cannot raise the claims of third parties; cannot claim standing based on a generalized grievance; and must raise a claim within the zone of interest covered by a statutory conferral of standing." *Elend*, 471 F.3d at 1206 (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203–10 (11th Cir. 1991)).

In her Amended Complaint, Weissenbach not only asks for monetary damages but also for declaratory and injunctive relief. Specifically, Weissenbach asks the Court to enjoin the Defendants from continuing to violate her rights under Title IX, the Equal Protection Clause of the Fourteenth Amendment, and Alabama state law. (*See* Doc. 28 at 19.) Weissenbach also asks the Court to "[i]ssue an injunction ordering these Defendants: (1) not to engage in gender discrimination and sexual harassment; (2) . . . to establish written policies and procedures against such discriminatory conduct; (3) and to establish a grievance procedure for reporting such conduct[.]" (*Id.*)

Assuming "as true all material allegations contained in the complaint and constru[ing] the complaint in a light most favorable to the complaining party," *Elend*, 471 F.3d at 1208, Weissenbach has not fulfilled her burden to show that she has standing to pursue injunctive relief against Defendants.

As Weissenbach is a former student of Brookwood High School, she has presented no facts to indicate that an injunction against Tuscaloosa County, its board members, or its administrators would prevent future harm or remedy the past harm that she allegedly suffered. Moreover, she has not alleged that she faces any possibility of real or imminent future harm resulting from any of the Defendants' alleged conduct. *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1303 (11th Cir. 2007) (affirming district court's dismissal of Title IX claims for injunctive relief when plaintiff no longer attended college where sexual harassment allegedly occurred). Thus, the Court cannot conclude that an injunction would prevent Weissenbach from suffering any future harm. Where, as here, a plaintiff cannot show that she is likely to suffer future harm from the defendants' conduct, she "does not have standing to seek prospective relief even if [s]he has suffered a past injury." *31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003).

To the extent that Weissenbach is seeking injunctive relief to prevent Defendants from harming current Tuscaloosa County students, these claims fail because they raise the rights of third parties not before the Court. *See Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994) (noting the general prohibition against third-party standing). The general prohibition against litigants asserting the rights of third parties "assumes that the party with the

right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). Even so, the doctrine of "third-party standing" allows a party who has standing in his own right to assert the rights of another upon "two additional showings." *Id.* at 130. The first question is "whether the party asserting the right has a 'close' relationship with the person who possesses the right. Second, [it must be] considered whether there is a 'hindrance' to the possessor's ability to protect his own interests." *Id.* (citations omitted). Here, Weissenbach has made no showing that she maintains a close relationship with current students within the Tuscaloosa County School System.[3] Moreover, even if she were able to make such a showing, there is nothing that suggests that there would be a hindrance to those students pursuing an action in their own name. Accordingly, Weissenbach lacks standing to pursue injunctive relief, and her claims seeking injunctive relief are due to be dismissed.

## B. State-Law Claims

---

[3] Nor would she likely be able to make such a showing. The type of close relationship required is more than that of being a close friend. The relationship must be related to the right that is being asserted. *See Singleton v. Wulff*, 428 U.S. 106, 114–15 (1976). For example, an attorney may have third-party standing to assert the rights of his clients to obtain legal representation, *U.S. Dep't. of Labor v. Triplett*, 494 U.S. 715, 720 (1990), or a doctor may have standing to litigate his patients' right to obtain an abortion. *Singleton*, 428 U.S. at 118.

Tuscaloosa County, the Board Members, Burroughs, and Fitzpatrick all move to dismiss Weissenbach's state-law claims against them. They argue that Weissenbach's claims against them for negligence, wantonness, and intentional infliction of emotional distress are barred by immunity. Specifically, these defendants raise two types of immunity: State immunity with respect to the state law claims brought against Tuscaloosa County and the Board Members and administrators in their official capacities and state-agent immunity with respect to the state law claims brought against the Board Members, Burroughs, and Fitzpatrick in their individual capacities. Burroughs and Fitzpatrick also move to dismiss Weissenbach's state-law claims for failure to state a claim. The Court will address each argument in turn.

### 1. State Immunity

Tuscaloosa County argues that Weissenbach's state-law claims against it are due to be dismissed because it is entitled to absolute immunity with respect to those claims. The Alabama Constitution provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. This immunity extends to state agencies. *See Ex parte Hale Cty. Bd. of Educ.*, 14 So. 3d 844, 848 (Ala. 2009). Because, under Alabama law, county boards of education are considered "local

agencies of the State, they are clothed in constitutional immunity from suit." *Id.* This immunity is absolute and a plaintiff is completely barred from bringing any state-law action for monetary, injunctive, or declaratory relief against a county school board. *See Bd. of School Comm'rs of Mobile Cty. v. Weaver*, 99 So. 3d 1210, 1217 (Ala. 2012).

As the Amended Complaint describes Defendant Tuscaloosa County as "the governing body for the Tuscaloosa County School System in Tuscaloosa County, Alabama" (doc. 28 ¶ 2), the Court concludes that Defendant Tuscaloosa County is in fact the Tuscaloosa County School Board. Because county boards of education are entitled to absolute immunity, Defendant Tuscaloosa County's motion to dismiss the state law-claims against it is due to be granted.

The Board Members, Fitzpatrick, and Burroughs also argue that they are entitled to absolute immunity with respect to Weissenbach's state-law claims against them in their official capacities. The Court agrees. "[A]ctions for damages against State agents in their official or representative capacities are considered actions to recover money from the State and are barred by State immunity under § 14." *Ex parte Moulton*, 116 So. 3d 1119, 1140 (Ala. 2013). Thus, a plaintiff may not bring claims for monetary relief against a county school board member in his or her official capacity in this

circumstance. *See Ex parte Montgomery Cty. Bd. of Educ.*, 88 So. 3d 837, 842 (Ala. 2012). This rule extends to a school board's employees. *See Matthews v. Ala. Agric. & Mech. Univ.*, 787 So. 2d 691, 697 (2000) (concluding that university employees sued in their official capacities for monetary damages are entitled to absolute immunity under § 14). However, § 14 does not prohibit "actions brought under the Declaratory Judgments Act . . . seeking construction of a statute and its application in a given situation" or actions brought to enjoin "[s]tate officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law." *Moulton*, 116 So. 3d at 1131, 1141 (internal quotation marks and citations omitted).

Here, the Court has already held that Weissenbach's claims for injunctive relief are due to be dismissed for lack of standing. Moreover, Weissenbach's request for a declaratory judgment does not fall within the declaratory judgment exception to § 14. Weissenbach asks the Court to "[g]rant [her] a declaratory judgment holding that the actions of the Defendants . . . violated . . . Alabama state laws." (Doc. 28 at 19.) It is not a request for "construction of a statute." *Moulton*, 116 So. 3d 1131. Thus, to the extent that Weissenbach's state-law claims are brought against the Board Members in their official capacities, their motion to dismiss is due to

be granted. Moreover, as Burroughs and Fitzpatrick are employees of the Tuscaloosa County School Board, their motion to dismiss Weissenbach's state-law claims against them in their official capacities is also due to be granted.

### 2. State-Agent Immunity

The Board Members, Burroughs, and Fitzpatrick also argue that Weissenbach's state-law claims against them in their individual capacities are barred by state-agent immunity. State agents are immune from civil liability when the conduct complained of involves the formulating of plans, policies, or designs, when the decisions complained of are administrative in nature, such as the "hiring, firing, transferring, assigning, or supervising [of] personnel," when the agent is discharging duties imposed on an agency by statute, rule, or regulation, and when the agent is exercising judgment in enforcing criminal law, releasing prisoners or persons of unsound mind, or educating students. *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000). A state agent is not immune, however, "when the [s]tate agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of law." *Id.* Moreover, a state agent is not immune "when the Constitution or laws of the United States, or the Constitution of [Alabama], or laws, rules, or regulations of [Alabama] enacted or

promulgated for the purpose of regulating the activities of a governmental agency require otherwise." *Id.*

The Alabama Supreme Court has established a burden-shifting process governing the assertion of state-agent immunity. First, the state agent bears the burden of showing that he was engaged in a function that gives rise to state-agent immunity. *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003). Once he has done so, the burden shifts to the plaintiff to show that one of the two exceptions to state-agent immunity recognized in *Cranman* applies. *See Ex parte Kennedy*, 992 So. 2d 1276, 1282–83 (Ala. 2008).

The Board Members and administrators argue that they are entitled to state-agent immunity because the conduct Weissenbach complains of relates to their supervision of personnel and exercise of judgment in educating students. (*See* Doc. 29 at 7.) According to the Amended Complaint, the Board Members negligently hired and supervised Petrey and failed to protect students from Petrey after being notified of his inappropriate conduct. Moreover, the Amended Complaint alleges that the Board Members failed to terminate or place Petrey on leave even as Petrey's relationship with Weissenbach continued. Weissenbach makes the same allegations against Burroughs and Fitzpatrick. Weissenbach also alleges that all of these

defendants had a duty to report any suspected child abuse under Alabama's mandatory reporting statute, Ala. Code § 26-14-3.

Weissenbach does not dispute that these actions relate to the Defendants' supervision of Petrey or exercise of judgment in educating students. (*See* Doc. 34 at 16.) Rather, she argues that through the allegations in the Amended Complaint she has met her burden to show that one of the exceptions to state-agent immunity applies.

The Court agrees that the Board Members and administrators have met their initial burden under the *Cranman* framework. All of Weissenbach's claims against them arise from their alleged mishandling of the investigation into Petrey, their failure to remove him from the school setting pending that investigation, and their failure to properly report Weissenbach's claims. These actions relate to the supervision of personnel and exercise of judgment in educating students, which are two of the immunized functions specifically described in *Cranman*. *See Cranman*, 792 So. 2d at 405. Moreover, Weissenbach acknowledges in the Amended Complaint that: "All actions complained of herein by the plaintiff against [each individual Defendant] occurred within the line and scope of [his or her] employment and representative capacity with Tuscaloosa County School System in Tuscaloosa Alabama." (*See* Doc. 28 at ¶¶ 5, 6, 7, 8, 9 10, 11, 13, 14.)

Therefore, unless one of the exceptions to state-agent immunity applies, Weissenbach's state-law claims against these defendants are barred.

Weissenbach does not allege that any federal or state law requires the Board Members and administrators to be subject to suit in their individual capacities. Thus, they can only be liable for Weissenbach's state-law claims if she has sufficiently alleged that they "acted willfully, maliciously, fraudulently, in bad faith, or beyond [their] authority." *See Kennedy*, 992 So. 2d at 1282. Weissenbach has not done so with regards to her claims for negligence and wantonness. Rather than allege that the Defendants acted beyond their authority when they failed to properly investigate her claims, Weissenbach asserts that their actions were taken within the scope of their employment. She has also failed to allege that these actions were contrary to any Tuscaloosa County policy. *See Kennedy*, 992 So. 2d at 1282–83 ("One of the way in which a plaintiff can show that a State agent acted beyond his or her authority is by proffering evidence that the State agent failed to 'discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'" (quoting *Giambrone*, 874 So. 2d at 1052)).

Moreover, the facts alleged do not support a finding that the Board Members and administrators' allegedly negligent and wanton actions were done willfully or in bad faith. With respect to Burroughs and Fitzpatrick, the

facts alleged show that they did take some steps to address the dance teachers' concerns by holding the telephone conference and having a follow up conversation with the dance teachers. Thus, it does not appear that they were acting in bad faith. Additionally, the Amended Complaint does not contain any factual allegations that suggests that the Board Members' failure to terminate or suspend Petrey was malicious or done in bad faith. Therefore, the Board Members and administrators' motions to dismiss Weissenbach's negligence and wantonness claims against them are due to be granted because they are barred by state-agent immunity. However, the Board Members and administrators are not entitled to state-agent immunity with respect to Weissenbach's claim for intentional infliction of emotional distress because it is an intentional tort and officials do not receive state-agent immunity for willful or malicious conduct. *See Cranman*, 792 So. 2d at 402 n.13.

### 3. Failure to State a Claim

#### a. Intentional Infliction of Emotional Distress

Burroughs, Fitzpatrick, and the Board Members also argue that Weissenbach's intentional infliction of emotional distress claims against them are due to be dismissed for failure to state a claim. In Alabama, intentional infliction of emotional distress is generally referred to as the tort

of outrage. *See Ex Parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997). Therefore, the Court will refer to the tort at issue as the tort of outrage, even though the Amended Complaint styles this claim as one for intentional infliction of emotional distress.

To succeed on an action based on outrage, Weissenbach must prove (1) the Defendants intended to inflict emotional distress, or knew or should have known that emotional distress would likely result from their conduct; (2) the Defendants' conduct was extreme and outrageous; (3) the Defendants' actions caused her distress; and (4) the distress was severe. *Martin v. Hodges Chapel, LLC*, 89 So. 3d 756, 763 (Ala. Civ. App. 2011). Outrage is a limited tort, and the Alabama Supreme Court has traditionally recognized it in only three situations: "(1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011) (internal citations omitted).

The Board Members and administrators argue that because they are not accused of directly causing harm to Weissenbach they could not plausibly have inflicted the emotional distress she allegedly suffered. The Court agrees that the purported misconduct alleged against the Board Members, Burroughs, and Fitzpatrick does not meet the high standard

required to state a claim for intentional infliction of emotional distress. While Weissenbach has plausibly alleged that Petrey engaged in egregious sexual harassment, she has made no such allegations against the Board Members and administrators. Her allegations that they failed to properly investigate Petrey after the dance teachers' complaint does not rise to the level of outrage required under Alabama law. Although perhaps the school officials could have launched a more thorough investigation into the dance teachers' claims, the facts alleged do suggest that they did take some steps to investigate Petrey. Therefore, Weissenbach has not sufficiently alleged that the Board Members, Burroughs, and Fitzpatrick acted in such an "extreme and outrageous" manner as to support her intentional infliction of emotional distress claims against them. As such, Weissenbach's claims for intentional infliction of emotional distress against the Board Members and administrators in their individual capacities are due to be dismissed.

b. Negligence and Wantonness Claims

As an alternative to their state-agent immunity argument, Burroughs and Fitzpatrick also argue that Weissenbach's negligence and wantonness claims against them fail as a matter of law. Specifically, they argue that they cannot be held liable for the negligent and wanton hiring or supervision of

Petrey and that there is no private right of action for failure to report under Ala. Code § 26-14-3. The Court will address each argument in turn.

As part of her negligence and wantonness claims, Weissenbach alleges that Tuscaloosa County, its Board Members, and administrators both negligently hired Petrey and "negligently and wantonly acted to protect [him] by not terminating him or at least placing him on a leave of absence." (Doc. 28 at ¶¶ 29, 30.) Burroughs and Fitzpatrick argue that as a matter of law they cannot be held liable for these alleged acts. The Court agrees. Ala. Code § 16-8-23 provides that the county board of education, upon the recommendation of the superintendent, has the sole power to hire public school teachers. *See* Ala. Code § 16-8-23. It further provides that the county board is the entity with the power to suspend or dismiss teachers accused of misconduct. *Id.* It is axiomatic that a defendant cannot be held liable for the negligent hiring of an individual that he did not possess the power to hire. Moreover, as Burroughs and Fitzpatrick did not have the authority to fire or suspend Petrey, they cannot be held liable for failing to do so. Accordingly, to the extent that Weissenbach is seeking to bring claims against Burroughs and Fitzpatrick for negligently hiring Petrey or for negligently and wantonly failing to fire or suspend him, she cannot do so. Therefore, even if Burroughs and Fitzpatrick are not entitled to state-agent immunity, Weissenbach has

failed to state a claim against them as to any negligence or wantonness surrounding Petrey's hiring or the failure to suspend or fire him.

Burroughs and Fitzpatrick also argue that they cannot be liable for any claims of negligent supervision that Weissenbach may have brought against them because Alabama law does not recognize claims brought against a supervisory employee for the negligent supervision of a subordinate. The Court agrees with the reasoning of several other federal district courts that have held that Alabama law does not recognize such a cause of action. *See, e.g., Hand v. Univ. of Ala. Bd. of Trs.*, 304 F. Supp. 3d 1173, 1182 (N.D. Ala. 2018) (granting motion to dismiss negligence claims against supervisors premised on negligent training and supervision of their subordinates); *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1312 (S.D. Ala. 2011); *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314–15 (S.D. Ala. 2001) (granting summary judgment on negligent supervision claim because "Alabama recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate"). The cause of action for negligent supervision is premised upon the fact that the master in a master-servant relationship may be "held responsible for his servant's incompetency." *See Lane v. Central Bank of Ala., N.A.*, 425 So. 1098, 1100 (Ala. 1983). High school administrators, such as Vice Principals Burroughs and Fitzpatrick, are

not in a master-servant relationship with the teachers at their school. Instead, they are also employees of the Board of the Education. Accordingly, to the extent that any of the negligence and wantonness claims against Burroughs and Fitzpatrick are not based directly on their own negligence, but instead, are based on claims of negligent supervision, those claims fail to state a claim.

Finally, Burroughs and Fitzpatrick argue that they cannot be found liable for negligently or wantonly failing to report Petrey under Ala. Code § 26-14-3, which requires educators to report suspected child abuse. Within Weisenbach's claims for negligence and wantonness, she alleges that the Defendants negligently and wantonly failed to report Petrey's suspected child abuse as required under the mandatory reporting statute. The Alabama Supreme Court has held that the mandatory reporting statute does not create a private right of action and that a plaintiff may not bring negligence or wantonness claims based on violations of this statute. *See C.B. v. Bobo*, 659 So. 2d 98, 101–02 (Ala. 1995). Thus, to the extent that Weissenbach brings negligence and wantonness claims against Burroughs, Fitzpatrick, and the Board Members under Ala. Code § 26-14-3, those claims fail as a matter of law.

## C. Title IX Claims[4]

Count III of the Amended Complaint asserts Title IX claims against Tuscaloosa County, the Board Members and administrators in their individual capacities, and the Board Members and administrators in their official capacities. Title IX states that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Although Title IX does not expressly permit private enforcement suits, the Supreme Court has found an implied private right of action for individuals to enforce the mandates of Title IX" and "that private individuals can obtain monetary damages" under Title IX. *Williams*, 477 F.3d at 1293. The Board Members, Burroughs, and Fitzpatrick move to dismiss the Title IX claims brought against them in their individual capacities. Weissenbach concedes that there is no individual liability under Title IX. *See Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999) ("Individual school officials . . . may not be held liable under Title IX."). As such, the Title IX claims brought against all of the Defendants in their individual capacities are due to be dismissed.

---

[4] Tuscaloosa County only moves the Court to dismiss Weissenbach's Title IX claims against it on the grounds of judicial estoppel. This ground for dismissal will be discussed below.

The Board Members, Burroughs, and Fitzpatrick also move to dismiss the Title IX claims brought against them in their official capacities. They argue that these claims are duplicative of the Title IX claims brought against Tuscaloosa County. "[W]hen an [official] is sued . . . in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an [official] is an agent.'" *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, suits against an individual defendant in his official capacity and against his governmental employer are redundant. *See id.* ("To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury."). As a result, courts throughout this Circuit have routinely dismissed official capacity claims against individual defendants when the entity that individual represents has also been named a defendant for the same alleged violation. *See M.R. v. Bd. of Sch. Comm'rs of Mobile Cty.*, Civil Action No. 11-0245-WS-C, 2012 WL 2931263 at *2 n.5 (S.D. Ala. July 18, 2012) (collecting cases). Although most of these cases involve identical § 1983 claims being asserted against individual defendants and their employers, the same logic extends to official capacity claims brought under Title IX. This is especially true due to the fact that Title IX claims may only

be asserted against Title IX recipient school districts and not individual defendants. *See Floyd v. Waiters*, 133 F.3d 786, 789 (11th Cir. 1998), *vacated by* 525 U.S. 802 (1998), *reinstated by* 171 F.3d 1264 (11th Cir. 1999) (finding that grant recipients are the only ones who can be held liable under Title IX). Therefore, Weissenbach's Title IX claims against the Board Members and administrators in their official capacities are redundant and their motion to dismiss those claims is due to be granted.

### D. Section 1983 Claims

Count IV of the Amended Complaint brings claims against Tuscaloosa County, the Board Members, Burroughs, and Fitzpatrick, pursuant to 42 U.S.C. § 1983, for violations of the Equal Protection Clause. Each of these defendants has moved to dismiss Weissenbach's equal protection claims.

#### 1. Claims Against Tuscaloosa County

Tuscaloosa County moves the Court to dismiss Weissenbach's Equal Protection Clause claims against it.[5] "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights

---

[5] Additionally, the Board Members, Burroughs, and Fitzpatrick move the Court to dismiss the § 1983 claims brought against them in their official capacities. As with Weissenbach's Title IX claims against the individual Defendants in their official capacities, these claims are redundant. *See Brown v. Neumann*, 188 F.3d 1289, 1290 n.1 (11th Cir. 1999) ("[A] suit against a government officer in his official capacity is simply a suit against the relevant governmental entity."). Therefore, the Board Members and administrators' motions to dismiss the § 1983 claims brought against them in their official capacities are due to be granted.

protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Municipalities and local government entities are "persons" to whom § 1983 applies. *Id.* (citing *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 690 (1978)).

However, local government entities "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 121 (quoting *Monell*, 436 U.S. at 691, 694). "A policy is a decision that is officially adopted by the [entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [entity]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (quoting *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)). "Even in the absence of an express policy or custom, a local government body can be held liable 'for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision.'" *Cuesta v. Sch. Bd. of Miami-Dade Cty., Fla.*, 285 F.3d 962, 968 (11th Cir. 2002) (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996)).

"Whether a particular official has final policymaking authority is a question of state law." *McMillan v. Monroe Cty.*, 520 U.S. 781, 786 (1997). Stated another way in order "to impose § 1983 liability on [an entity], a plaintiff must show that: (1) [her] constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Here, Tuscaloosa County argues that because the Amended Complaint does not allege the existence of an official policy or custom that led to Weissenbach's injuries her § 1983 claims against it should be dismissed. The Court agrees that the Amended Complaint is devoid of any allegations that Tuscaloosa County had any express policies or customs in place that led to Petrey's sexual relationship with Weissenbach. Instead, Weissenbach merely alleges that the Defendants "created an atmosphere that subjected [her] to sexual abuse and harassment" and "cultivated a culture of fraternization." (*See* Doc. 28 ¶¶ 43, 45.)

However, the Amended Complaint does allege that Tuscaloosa County, its officials, and administrators failed to thoroughly investigate the dance teachers' complaint, made the decision to continue to employ Petrey,

and did not attempt to separate Petrey from Weissenbach pending an investigation into these allegations. (*See* Doc. 28 at ¶ 44.) Under Alabama law, the Board is the entity with the ultimate authority to suspend or dismiss teachers engaged in misconduct. *See Ala. Code* § 16-8-23. Thus, it is plausible that the Board's decision to not suspend Petrey pending its investigation constituted an act by those with final policymaking authority.

Nevertheless, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cty. Comm'rs of Brayn Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). Weissenbach must also allege that Tuscaloosa County acted with deliberate indifference to her equal protection rights, which "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 410. A court must "carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* Thus, for Tuscaloosa County to be liable to Weissenbach under § 1983, the deprivation of her equal protection rights must have been "a plainly obvious consequence" of the decision to continue to employ Petrey. *See id.* at 411. Because Weissenbach alleges that the dance teachers' complaint had been passed on to the Board, it could be inferred that the Board made this decision even though it was aware of the dance teachers' allegations.

However, Weissenbach has not sufficiently alleged facts from which the Court can infer that the Board's response was deliberately indifferent. Taking the allegations in the Amended Complaint as true, the substance of the dance teachers' complaint was that Weissenbach talked about Petrey during dance class as if he was her boyfriend and that they were concerned that Petrey's relationship with Weissenbach was inappropriate. (Doc. 28 ¶ 23.) Importantly, Weissenbach makes no allegations that the dance teachers told the administrators that they knew Weissenbach and Petrey's relationship was sexual in nature. Without more factual detail, the Court cannot say that the Board's decision to allow Petrey to continue teaching pending its investigation constituted deliberate indifference. Due to the limited information available to the Board, it was not plainly obvious that its inaction would cause Weissenbach to be sexually harassed. Thus, although Weissenbach has alleged that the failure to terminate Petrey or place him on leave allowed him to continue to sexually abuse her (doc. 28 ¶ 30), she has not sufficiently alleged that the Board's actions were done with deliberate indifference to her equal protection rights. Therefore, Weissenbach's § 1983 claim against Tuscaloosa County is due to be dismissed.

2. Individual Capacity Claims

Burroughs, Fitzpatrick, and the Board Members argue that Weissenbach's equal protection claims against them in their individual capacities should be dismissed under the doctrine of qualified immunity. Government officials are provided complete protection by qualified immunity when sued in their individual capacities, as long as "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity allows government officials to carry out the discretionary duties of their position "without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating federal law.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)). The Eleventh Circuit engages in a two-part analysis to determine whether a government official is entitled to the defense of qualified immunity. "First the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Second, if the official meets that burden the plaintiff must prove that the official's conduct violated clearly established law."

*Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citations omitted).

When determining if an official's actions were within the scope of his discretionary authority, courts consider "whether they are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). An official will be found to have been acting within the scope of his discretionary authority if he was "(a) performing a legitimate job-related function (that is, pursuing a job related goal), (b) through means that were within his power to utilize." *Id.* Here, it is clear that the Board Members, Burroughs, and Fitzpatrick were acting within the scope of their discretionary authority because it is only by virtue of their positions as school board members and administrators that they were tasked with investigating Petrey's relationship with Weissenbach.[6]

As the Board Members and administrators have established that they were acting within the scope of their discretionary authority, "the burden shifts to the plaintiff to show that the defendant[s are] not entitled to qualified immunity." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "To

---

[6] Weissenbach does not dispute that the individual Defendants were acting within the scope of their discretionary authority. (*See* Doc. 34 at 13–15.) Moreover, the Amended Complaint acknowledges that all of the alleged actions of the individual Defendants occurred "within the line and scope of [their] employment." (*See* Doc. 28 at ¶¶ 5, 6, 7, 8, 9, 10, 11, 13, 14.)

overcome qualified immunity, the plaintiff must satisfy a two prong test; [she] must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman*, 370 F.3d at 1264 (citing *Wilson v. Layne*, 526 U.S. 603, 608 (1999)).

Weissenbach claims that Defendants have violated her rights under the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection Clause confers a federal constitutional right to be free from sex discrimination." *See Williams*, 477 F.3d at 1300 (11th Cir. 2007). This protection includes the right to be free from sexual harassment at a public school. *See Hill v. Cundiff*, 797 F.3d 948, 978–79 (11th Cir. 2015).

As an initial matter, the Court notes that Weissenbach claims she is bringing her equal protection claims against the individual Defendants "for their direct actions and inactions" rather than under a theory of supervisory liability. (*See* Doc. 34 at 13.) In support of this assertion, she cites to the Eleventh Circuit's statement in *Hill v. Cundiff* that "[a] government official . . . may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment." 797 F.3d at 978 (11th Cir. 2015) (quoting *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1250 (10th Cir. 1999)). Burroughs, Fitzpatrick, and the Board Members argue that because no one other than Petrey subjected Weissenbach to sexual

harassment that the § 1983 claims against them should be subject to the stringent standards of supervisory liability. (*See* Doc. 36 at 8–9.)

The Court agrees with the Defendants that Weissenbach's equal protection claims against them are grounded in a theory of supervisory liability. The Amended Complaint is devoid of any allegations that anyone other than Petrey personally participated in Weissenbach's sexual harassment. Moreover, the Court reads *Hill* as a supervisory liability case. Borrowing largely from the Tenth Circuit's logic in *Murrell*, the Eleventh Circuit held in *Hill* that a principal could be found liable under the Equal Protection Clause for his deliberately indifferent response to one student's sexual harassment of another. *See Hill*, 797 F.3d at 978–79. In *Murrell*, the Tenth Circuit reached its conclusion that a school official's deliberate indifference to sexual harassment violated the Equal Protection Clause due to the fact that principals and teachers exercise supervisory authority over students. *Murrell*, 186 F.3d at 1251–52. This, coupled with the fact that supervisory liability may be shown by establishing that a supervisor has an "improper custom or policy [that] results in deliberate indifference to constitutional rights," *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010), leads the Court to conclude that the deliberate indifference standard discussed in *Hill* is the same as the supervisory liability

standard. Accordingly, the Court will assess Weissenbach's § 1983 claims against the Board Members and administrators under the supervisory liability framework.

For a supervisor to be individually liable for a subordinate's alleged violation of this Equal Protection Clause right, the supervisor must have either "personally participate[d] in the alleged constitutional violation" or there must be a "causal connection between actions of the supervising official and the alleged constitutional deprivation." *Id.* (quoting *Hartley v. Parnell*, F.3d 1263, 1268 (11th Cir. 1999)). The required causal connection may be shown in two circumstances. First, there is a causal connection "when a 'history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" *Id.* Second, a causal connection is established "when a supervisor's 'improper custom or policy results in deliberate indifference to constitutional rights.'" *Id.* "For a history of abuse to be sufficiently widespread to put a supervisor on notice, the abuse must be 'obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'" *Id.*

Here, Weissenbach does not assert that any of the Board Members or administrators personally participated in the alleged sexual harassment. Thus, she must allege sufficient facts to support a causal connection

between the actions of the Board Members and administrators and the alleged Equal Protection Clause violation. The Court will address the administrators and the board members' alleged actions separately.

### a. Administrators Burroughs and Fitzpatrick

Weissenbach argues that the inadequate response by Vice Principals Burroughs and Fitzpatrick to her dance teachers' concerns amounted to deliberate indifference. A plaintiff can prevail on an equal protection claim of deliberate indifference to sexual harassment if she shows that the individual defendant "'actually knew of and acquiesced in' the discriminatory conduct." *Hill*, 797 F.3d at 978 (11th Cir. 2015) (quoting *Murrell* 186 F.3d 1238 at 1250).

Here, Weissenbach has plausibly alleged that Burroughs and Fitzpatrick had actual knowledge of her sexual relationship with Petrey due to the complaint made by her dance teachers in early 2014. However, she has not plausibly alleged that they acquiesced in Petrey's conduct. A school official is "not deliberately indifferent simply because the measures [he or she] takes are ultimately ineffective in stopping a teacher from harassing [students]." *Sauls v. Pierce Cty. Sch. Dist.*, 399 F.3d 1279, 1285 (11th Cir. 2005) (discussing deliberate indifference in the Title IX context). Instead, where, as here, an official makes a good faith response to sexual

harassment allegations he should not be found to have acted in a deliberately indifferent manner. *See id.*

Taking the allegations in the Amended Complaint as true, Burroughs and Fitzpatrick did make a good faith response to the dance teachers' complaints. Although Weissenbach alleges that she and Petrey continued to have frequent contact at school after the administrators were notified of their potentially inappropriate relationship, the Amended Complaint also states that Burroughs and Fitzpatrick took steps to investigate the dance teachers' claims. For example, they held a teleconference with the dance teachers where they implied that they were very upset with the situation. Burroughs also responded to the dance teachers' follow up call and informed them that their complaint was being investigated. This is a far cry from the situation in *Hill* where the principal's only response to a student's alleged rape was to discontinue the school's one-day sexual harassment workshop for administrators. *Hill*, 797 F.3d at 979. While it appears that Burroughs and Fitzpatrick's response to the dance teachers' complaint was ultimately ineffective, it cannot be said that their actions constituted deliberate indifference to Weissenbach's constitutional rights. Therefore, they committed no constitutional violation and are entitled to qualified immunity.

b. Board Members[7]

The Board Members are also entitled to qualified immunity. Weissenbach has failed to allege that the Board Members, acting in their individual capacities, either had notice of a history of widespread abuse by Petrey or that they acted with deliberate indifference to her constitutional rights.

An allegation that the Board Members failed to properly investigate a single complaint against Petrey is insufficient to show that they had notice of Petrey's "history of widespread abuse." *See Doe*, 604 F.3d at 1267 (finding that two prior complaints made against a teacher were insufficient to put a principal on notice of a "history of widespread abuse"). Moreover, Weissenbach has not alleged that the individual board members had a custom or policy in place that encouraged Petrey to continue his sexual relationship with her. Instead, Weissenbach's allegations of deliberate indifference are based on the fact that her relationship with Petrey continued

---

[7] The Board Members also argue that Weissenbach has failed to state a § 1983 claim against them in their individual capacities because the Amended Complaint states that "[a]ll actions complained of herein by the plaintiff against [each Defendant Board Member] occurred within the line and scope of his employment and representative capacity with the Tuscaloosa County School System in Tuscaloosa, Alabama." (*See* Doc. 35 at 7.) However, Weissenbach may bring an individual capacity suit against Defendants under § 1983 "for acts done in the course of their official duties." *See Hafer v. Melo*, 502 U.S. 21, 28 (1991). Therefore, this argument does not provide a basis for granting the Board Members' motion to dismiss.

even after Burroughs told the dance teachers that the Board was investigating their claims. These allegations do not meet the "extremely rigorous" standard required to bring a supervisory liability claim. *See Braddy v. Fla. Dept't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). Moreover, there is nothing to indicate that the Board's failure to suspend Petrey after receiving an isolated complaint from the dance teachers constituted acquiescence in his conduct. Thus, the Board Members are entitled to qualified immunity on Weissenbach's equal protection claims.

### E. Judicial Estoppel

Finally, the Court will address the contention that Weissenbach's claims are due to be dismissed under the doctrine of judicial estoppel. "Judicial estoppel is an equitable doctrine invoked at a court's discretion." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)) *overruled in part on other grounds by Slater v. United States Steel Corp.,* 871 F.3d 1174 (11th Cir. 2017) (en banc). Application of the judicial estoppel doctrine prevents a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Burnes*, 291 F.3d at 1285 (quoting 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.30, p. 134–62 (3d ed. 2000)). The purpose of the doctrine is "to protect the integrity

of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749–50. Because judicial estoppel protects the process, not a specific party, the one asserting the doctrine need not show that it detrimentally relied on the other party's previous assertions or even that it was involved in the previous proceeding. *Burnes*, 291 F.3d at 1286.

The Eleventh Circuit primarily analyzes two factors when applying judicial estoppel to a particular case. *See id.* at 1285 (noting that the "two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions" in *New Hampshire*); *Barger v. City of Cartersville*, 348 F.3d 1289, 1293 (11th Cir. 2003) *overruled in part on other grounds by Slater*, 871 F.3d 1174. First, a party's allegedly inconsistent position must have been "made under oath in a prior proceeding." *Burnes*, 291 F.3d at 1285 (quoting *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir. 2001)). Second, the "inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* "[T]hese two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Id.* at 1286.

Here, Defendants argue that Weissenbach is judicially estopped from bringing her claims because they are inconsistent with statements she made in an affidavit filed in the criminal case against Petrey, *State of Alabama v. Petrey*, CC-2015-002438.00 (Tuscaloosa County, Ala.).[8] There, due to his alleged relationship with Weissenbach, the State charged Petrey with violating Ala. Code § 13-A-6-81(a), which prohibits school employees from engaging in sex with students. (*See* Doc. 30-2.) In the affidavit, Weissenbach stated that she and Petrey did not enter into a sexual relationship until after she turned eighteen. Moreover, she indicated that her relationship with Petrey was conducted in private and away from school. Weissenbach also asserted that she was not a victim of Petrey's and that she did not intend to participate in any further court actions related to her relationship with Petrey.

As the affidavit contains inconsistent statements made under oath in a prior proceeding, the only remaining question is whether Weissenbach's

---

[8] Defendants Burroughs and Fitzpatrick have filed the affidavit as an exhibit to their motion to dismiss. (*See* Doc. 30-1.) They have also filed as an exhibit the State of Alabama's motion to dismiss the criminal charge against Petrey. (*See* Doc. 30-2.) The Court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Here, Weissenbach does not dispute the authenticity of the attached exhibits. As the exhibits concern Weissenbach's relationship with Petrey, which is central to her claims, the Court will take the exhibits into consideration.

inconsistent positions were "calculated to make a mockery of the judicial system." *Burnes*, 291 F.3d at 1285 (11th Cir. 2002). The Eleventh Circuit has stated that judicial estoppel may only apply in situations involving intentional contradictions, "not simple error or inadvertence." *Id.* at 1286.

Weissenbach does not argue that her contradictory positions were made due to either inadvertence or error. Instead, Weissenbach states that "[t]he parties here don't know why Weissenbach agreed to sign such an affidavit, but discovery may reveal that she may have been pressured or coerced to do so by her parents, Petrey, Petrey's lawyer, or someone in the community at large." (Doc. 34 at 10.) Weissenbach further asserts that judicial estoppel is inapplicable to her claims because "[s]he had nothing to gain by submitting the affidavit." (*See id.*)

The Court disagrees with Weissenbach's assessment and finds that the application of the doctrine of judicial estoppel is entirely appropriate at this motion to dismiss stage. Weissenbach signed the affidavit in Petrey's criminal case on January 30, 2016. She filed the original complaint in this case on September 23, 2017, less than two years later. Although Weissenbach seemingly acknowledges that the affidavit contradicts the position she has taken in this case, she fails to make any argument that she has recanted her prior position or to explain these discrepancies. Because

the two positions taken by Weissenbach are directly contradictory, it is clear that she either intended to mislead the state court or is now misleading this Court.

Moreover, Weissenbach's argument that judicial estoppel should not apply because she had nothing to gain by submitting the affidavit is unavailing. A party asserting inconsistent positions in two proceedings does not need to have gained an unfair advantage in the prior proceeding for judicial estoppel to apply. *See Slater*, 871 F.3d at 1181–82. Further, the Court is unconvinced that Weissenbach did not gain something by submitting the affidavit. In her affidavit, Weissenbach indicated that she would not help with the State's criminal case against Petrey. Her apparent goal was to cause the State to drop its criminal charges. This goal was accomplished when the criminal charges against Petrey were dropped due to Weissenbach's failure to cooperate. (*See* Doc. 30-2.) Thus, Weissenbach's affidavit seemingly achieved its purpose.

Further, due to her inconsistent statements, it would be inequitable to allow Weissenbach to proceed with this lawsuit. By filing this suit against Tuscaloosa County, Weissenbach is asking taxpayers to foot the bill for Petrey's alleged inappropriate conduct, which she claims Tuscaloosa County and its employees are at least partly responsible for because much of this

activity occurred at school. However, in state court, Weissenbach stated that "[a]t no time did Brad Petrey ever use his position as teacher to manipulate, influence, pressure, or encourage me to enter a sexual relationship." (*See* Doc. 30-1.) If the Court allowed this case to proceed, Weissenbach could recover monetary damages from the school system while simultaneously protecting Petrey from facing criminal charges. This would make a mockery of the judicial system because it would allow Weissenbach to assume different positions based on "the exigencies of the moment." *Slater*, 871 F.3d at 1176. This is exactly the type of situation that the doctrine of judicial estoppel is meant to prevent. As such, Weissenbach's remaining Title IX claim against Tuscaloosa County is due to be dismissed.

Moreover, even if the Court had not already concluded that Weissenbach's other claims against Tuscaloosa County, the Board Members, Burroughs, and Fitzpatrick were each due to be dismissed, it would do so under the doctrine of judicial estoppel. Further, although Defendants McBride and Swinford have not filed motions to dismiss, Weissenbach's claims against them are also due to be dismissed. For judicial estoppel to effectively safeguard against abuse of the judicial system its reach must extend to Weissenbach's claims against Tuscaloosa County and its employees. Otherwise, Weissenbach would be allowed to bring a civil

case against those who were only peripherally involved in her relationship with Petrey while making statements in state court that helped absolve Petrey of criminal liability. Because this result would make a mockery of the judicial system, Weissenbach's claims against these defendants are due to be dismissed.

Finally, the doctrine of judicial estoppel also supports dismissal of Weissenbach's claims against Petrey. Although it at first appears inequitable to allow Petrey to be both the beneficiary of Weissenbach's affidavit and the doctrine of judicial estoppel, the doctrine is meant to protect the integrity of the courts rather than benefit any particular party. *See New Hampshire*, 532 U.S. at 749. Indeed, the rule was created "to prevent 'improper use of judicial machinery.'" *See id.* (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980)). It would undermine the integrity of the judicial system to allow Weissenbach to bring claims against Petrey where many of the factual allegations that support those claims, such as her claims that they were having sex during the summer of 2014, are directly contradicted by the state court affidavit. The Court should not have to expend taxpayer resources considering such claims. Therefore, Weissenbach's claims against Petrey are also due to be dismissed under the doctrine of judicial estoppel.

## IV. CONCLUSION

For the reasons stated above, Defendants Tuscaloosa County, Moore, Barnett, Mims, Presley, Orr, Smalley, and Copeland's motion to dismiss (doc. 29) and Defendants Burroughs and Fitzpatrick's motion to dismiss (doc. 30) are due to be granted, and this case is due to be dismissed. A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on November 8, 2018.

L. Scott Coogler
United States District Judge

194800